UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA       :

    - v. -                    :     SEALED INDICTMENT

GERALD MIGDOL,                  :     21 Cr. ____

        Defendant.           :     21 CRIM 706

- - - - - - - - - - - - - - - - - X

### Background

1. As set forth below, from at least in or about October 2019, through at least in or about January 2021, GERALD MIGDOL, the defendant, orchestrated and participated in a scheme to misrepresent and conceal the sources of contributions made to the campaign of a candidate seeking election to a municipal office in New York City, and fraudulently attempted to procure for that candidate public matching funds based on those contributions.

### *New York City's Public Matching Funds Program*

2. At all times relevant to this Indictment, the New York City Campaign Finance Board ("CFB") oversaw and administered a publicly-funded campaign finance system in connection with municipal elections in New York City that included, among other things, a "matching funds program" that provided eligible candidates with public funds based on the number and amount of certain donor contributions. According to the CFB, "[b]y matching their contributions with public funds, the [p]rogram empowers New

1

Yorkers in every neighborhood to make their voices heard in city elections" and "[b]y encouraging candidates to raise small-dollar contributions from average New Yorkers, the program increases engagement between voters and those who seek to represent them."

3. At all times relevant to this Indictment, the public matching funds program administered by the CFB operated, as relevant here, in the following manner:

    a. Candidates running for certain municipal offices in New York City, including the office of New York City Comptroller, were eligible to participate in the matching funds program if they met certain criteria. The matching funds program would provide up to $3,416,250.00 in public matching funds to candidates for the office of New York City Comptroller.

    b. Among other things, to be eligible to receive public matching funds, candidates were required to meet a two-part fundraising threshold. Specifically, a candidate had to collect a minimum number of contributions and raise a minimum amount of qualifying contributions from New York City residents.

    c. If candidates met the eligibility criteria, they could receive different matching fund amounts based on the kinds of contributions they receive. The CFB provided candidates with matching funds based on the amounts of eligible contributions. The program would "match" up to $250.00 per contributor, and candidates could receive up to $8.00 in matching funds for each

$1.00 of eligible contributions. In other words, for each eligible contribution of at least $250.00, a candidate could collect up to $2,000 in public matching funds. Certain kinds of contributions were subject to additional limitations. For instance, where eligible contributions were paid by cash or money orders, the program would "match" up to $100.00 per contributor.

        d.   A number of contributions that otherwise could be accepted by political campaigns were not eligible to be matched, including, among other contributions, (i) contributions from non-New York City residents; (ii) contributions from or intermediated by individuals doing business with New York City; (iii) contributions from individuals under the age of eighteen; (iv) contributions received after December 31 of a particular election year; and (v) contributions not timely reported as required in a campaign's disclosure statements.

        e.   Certain kinds of contributions also are prohibited entirely, including, among other things, "nominee contributions," in which money is given to a campaign under a contributor's name, but in reality the money for that contribution came from, or was reimbursed by, another person or entity. The CFB informs candidates, in substance and in part, that "[n]ominee contributors are also referred to as straw donors, and these types of contributions are not only prohibited but also illegal."

*The Conspiracy to Defraud
the Public Matching Funds Program*

4.  In or about September 2019, a particular candidate ("Candidate-1") filed a certification with the CFB declaring Candidate-1's candidacy for the office of the New York City Comptroller.  As part of that certification, Candidate-1 indicated, among other things, that Candidate-1 wished to participate in the CFB's matching funds program.  Candidate-1's campaign subsequently sought public matching funds, and received at least approximately $2 million in such funds.

5.  From at least in or about October 2019, through at least in or about January 2021, GERALD MIGDOL, the defendant, and others known and unknown, conspired to obtain fraudulent contributions for Candidate-1 that would be used, among other things, to seek public matching funds.  A number of those contributions, which were obtained at MIGDOL's direction, were nominee contributions made in the names of particular individuals who did not personally fund or were reimbursed for their contributions.  Other fraudulent contributions, which also were obtained at MIGDOL's direction, were made in the names of particular individuals who, in fact, had not authorized the contributions.

6.  For example, on at least two occasions in or about November 2019 and in or about January 2020, GERALD MIGDOL, the defendant, directly funded or reimbursed nominee contributions to

4

Candidate-1's campaign purportedly made by others.

7. Additionally, on at least two occasions in or about November 2019 and in or about July 2020, at MIGDOL's direction, a particular individual ("CC-1") submitted fraudulent contributions to Candidate-1's campaign in the names of dozens of individuals who, in fact, had not authorized contributions to Candidate-1. At MIGDOL's direction, CC-1 falsified CFB forms regarding those fraudulent contributions.

8. GERALD MIGDOL, the defendant, conspired to obtain fraudulent contributions for Candidate-1 for, among other reasons, the purpose of defrauding the CFB's matching funds program. Indeed, in or about July 2020, MIGDOL expressly stated to several co-conspirators, including CC-1, in substance and in part, that:

> We get 8x1 for money orders of $100
> For Money orders of $250=8x1 for first $100 and the other $150 is not matched.
> So a MO for $250 is worth $950 for [Candidate-1].
> Hopefully our next City Comptroller

### November 2019 Contributions

9. On or about November 21, 2019, GERALD MIGDOL, the defendant, withdrew approximately $1,000.00 from a particular bank account ("Bank Account-1") at a specific bank branch located in New York, New York ("Branch-1"). That same day, MIGDOL purchased five money orders at Branch-1 in the names of five different individuals, each in the amount of $250.00. Contributions funded by the money orders purchased at Branch-1 were made to Candidate-

5

1's campaign not in MIGDOL's name, but rather in the names of those five individuals, one of whom was MIGDOL's minor relative.

### *January 2020 Contributions*

10. On or about January 5, 2020, GERALD MIGDOL, the defendant, emailed a particular individual ("Contributor-1") and stated, in substance and in part, as follows:

> I need you to do me a favor. I need a check for $250 for [Candidate-1]'s campaign for NYC Comptroller next year. See the attached form that needs to be filled out[.] Come to my office Monday if you can. Thanks we'll talk[.]

11. Contributor-1 agreed to provide a contribution, but stated, in substance and in part, that Contributor-1 "wouldn't have [the] donation together until the second week of February," and asked if that would "to[o] late." Shortly thereafter, GERALD MIGDOL, the defendant, emailed Contributor-1 and stated, in substance and in part, "Too late[.] I'll quickpay you the money tomorrow."

12. On or about January 7, 2020, GERALD MIGDOL, the defendant, transferred approximately $1,000.00 to Contributor-1 from Bank Account-1. On or about that same day, a contribution to Candidate-1's campaign in the amount of $125.00 was made in the name of Contributor-1.

13. Additionally, on or about January 7, 2020, GERALD MIGDOL, the defendant, wrote a check to another individual ("Contributor-2") in the amount of $500.00, which was drawn on a

6

second bank account ("Bank Account-2"). On or about that same day, two contributions to Candidate-1's campaign, each in the amount of $250.00, were made in the name of Contributor-2 and Contributor-2's relative.

### *July 2020 Contributions*

14. On or about July 9, 2020, GERALD MIGDOL, the defendant, sent another individual ("Contributor-3") an email stating, in substance and in part, "Hey [Contributor-3] we need to get the form and check made out (remember not mailing check yet)."

15. On or about that same day, GERALD MIGDOL, the defendant, transferred approximately $250.00 from a third bank account ("Bank Account-3") to Contributor-3. A contribution to Candidate-1's campaign in the amount of $250.00 was made in the name of Contributor-3 on or about July 9, 2020.

16. Through these and other efforts by GERALD MIGDOL, the defendant, as well as others involved in the scheme, MIGDOL and his co-conspirators procured nominee and other fraudulent contributions for Candidate-1's campaign, which in turn were submitted by Candidate-1's campaign to the CFB in connection with Candidate-1's request for public matching funds. Such efforts were intended to enable Candidate-1's campaign to procure at least tens of thousands of dollars in additional public matching funds.

**Statutory Allegations**

COUNT ONE

(Wire Fraud Conspiracy)

The Grand Jury charges:

17.   The allegations contained in paragraphs 1 through 16 of this Indictment are repeated and realleged as if set forth fully herein.

18.   From at least in or about October 2019, through at least in or about January 2021, in the Southern District of New York and elsewhere, GERALD MIGDOL, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit wire fraud in violation of Title 18, United States Code, Section 1343.

19.   It was a part and an object of the conspiracy that GERALD MIGDOL, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, MIGDOL and others executed a scheme, using interstate wires of funds and

emails, to misrepresent and conceal the sources of contributions to Candidate-1's campaign, which contributions were intended to enable Candidate-1's campaign to procure public matching funds under false pretenses.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
(Wire Fraud)

The Grand Jury further charges:

20. The allegations contained in paragraphs 1 through 16 of this Indictment are repeated and realleged as if set forth fully herein.

21. From at least in or about October 2019, through at least in or about January 2021, in the Southern District of New York and elsewhere, GERALD MIGDOL, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and attempting to do so, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, and did aid and abet the same, to wit, MIGDOL sent interstate emails facilitating fraudulent contributions to and from the Southern District of New York as part of a scheme to misrepresent and

conceal the sources of contributions to Candidate-1's campaign, which contributions were intended to enable Candidate-1's campaign to procure public matching funds under false pretenses.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE
(Aggravated Identity Theft)

The Grand Jury further charges:

22. The allegations contained in paragraphs 1 through 16 of this Indictment are repeated and realleged as if set forth fully herein.

23. From at least in or about October 2019, through at least in or about January 2021, in the Southern District of New York and elsewhere, GERALD MIGDOL, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, MIGDOL possessed and used, and caused others to possess and use, without authorization, the names and signatures of individuals purported to be contributors to Candidate-1's campaign during and in relation to the wire fraud conspiracy charged in Count One of this Indictment.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

**FORFEITURE ALLEGATIONS**

24. As a result of committing the offenses alleged in Counts One and Two of this Indictment, GERALD MIGDOL, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property constituting or derived from, proceeds obtained directly or indirectly as a result of the commission of the said offenses, including, but not limited to, a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses that the defendant personally obtained.

Substitute Asset Provision

25. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

        (Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_____       _____
FOREPERSON                                    DAMIAN WILLIAMS
                                                                    United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA,**

v.

**GERALD MIGDOL,**

Defendant.

### SEALED INDICTMENT

21 Cr. \_\_\_\_

(18 U.S.C. §§ 1349, 1343, 1028A(a)(1), 1028A(b), and 2.)

DAMIAN WILLIAMS
United States Attorney

*[signature]*
Foreperson

True Bill, Arrest Warrant + Sealed Indictment filed 11/17/21 before OTW